**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| LADARION HUGHES, et al. | Case No. 6:23-cv-344-JDK |
| Plaintiff | Judge Jeremy D. Kernodle |
| v. | |
| SMITH COUNTY, TEXAS | |
| Defendant | |

---

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
AND SUPPORTING MEMORANDUM**

---

**NOTICE OF MOTION AND MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

PLEASE TAKE NOTICE that on **<u>August 4,  2025,</u>** in the U.S. District Court for the Eastern District of Texas, 211 W. Ferguson Street, Tyler, TX 75702, Plaintiffs Ladarion Hughes, Angela Alonzo, and Demarcus Lively, individually and on behalf of all similarly situated persons, will and hereby do move this Court pursuant to Fed. R. Civ. P. 23(e) for an order that:

1.     Grants preliminary approval of the proposed $1,500,000.00 non-reversionary settlement of *Hughes v. Smith County*, Case No. 6:23-cv-344-JDK (E.D. Tex.), as described in the Class Action Settlement Agreement ("Settlement Agreement") and General Release attached as Exhibit 1, as fair, reasonable, and adequate[1];

2.     Conditionally certifies the Settlement Class, as defined in the Settlement Agreement, for the purpose of settlement;

---

[1] A proposed preliminary approval order is attached as Exhibit 2.

3.      Appoints Akeeb Dami Animashaun; Camilla Hsu & Nathan Fennell (Deason Criminal Justice Reform Center); and Margaret Gould & Jon Loevy (Loevy & Loevy).as Class Counsel;

4.      Appoints American Legal Claims Services, Inc. to serve as the Settlement Administrator;

5.      Directs notice to be disseminated to Class Members in the form and manner proposed by the Parties as set forth in the Settlement Agreement and exhibits thereto;

6.      Sets deadlines for Class Notice to be sent, exclusion and objection deadlines, and a hearing date and schedule for final approval of the Settlement and consideration of Class Counsel's fee application, as set forth in the following agreed-upon schedule:

| Event | Date |
|---|---|
| Notice of Class Action Settlement mailed to settlement class members | 30 days after preliminary approval |
| Response Deadline for Opt-Outs, Objections, and Disputes | 45 days after Notice mailing |
| Motions for Final Approval and for Attorneys' Fees and Expenses and Class Representative Service Awards Filed | 30 days after Response deadline |
| Hearing on Motions for Final Approval and Attorneys' Fees and Expenses and Class Representative Service Awards | To be determined by the Court |

The settlement should be preliminarily approved, and notice of the proposed settlement should be distributed to Class Members, because "the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval." *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015). Further, the proposed notice of settlement complies with due process requirements and is the "best notice that is practicable under the

circumstances," as it provides Class Members an opportunity to fully assess the settlement before deciding whether to opt out or submit objections. *See* Fed. R. Civ. P. 23(c)(2)(B).

This Motion is based upon this Notice, the Supporting Memorandum, the Settlement Agreement, all papers and pleadings on file in this action, and such oral argument as may be considered by the Court at the time of the hearing.

DATE: August 4, 2025                     Respectfully Submitted,

Nathan Fennell
Camilla Hsu
Deason Criminal Justice Reform Center
SMU Dedman School of Law
P.O. Box 750116
Dallas, TX 75275
nfennell@smu.edu
camillah@smu.edu
(214) 768-6973

Meg Gould
Jon Loevy
LOEVY & LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
gould@loevy.com
jon@loevy.com
(312) 243-5900

 /s/ Akeeb Dami Animashaun
Akeeb Dami Animashaun
355 S. Grand Ave, Suite 2450
Los Angeles, CA 90071
dami@animashaun.me
(929) 266-3971

*Counsel for Plaintiffs & Proposed Class*

**MEMORANDUM IN SUPPORT OF MOTION FOR**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## I.  INTRODUCTION

Named Plaintiffs Ladarion Hughes, Angela Alonzo, and Demarcus Lively, seek preliminary approval of a proposed global class action settlement of *Hughes v. Smith County*, Case No. 6:23-cv-344-JDK (E.D. Tex.). Plaintiffs filed this class action lawsuit against Defendant Smith County (the "County") on July 11, 2023, alleging that the County violated the Fourteenth Amendment to the United States Constitution by failing to release them, and similarly situated individuals, within a reasonable period of time after they had completed their felony criminal sentences and no other holds or warrants justified their continued detention. After conducting a year of extensive written discovery and on the eve of the commencement of oral discovery, the Parties agreed that a settlement was in the best interest of the Parties and would avoid further time and expense on discovery as well as the uncertainty that comes with protracted litigation. The Parties reached a global settlement on April 5, 2025, after extensive arms-length negotiations and two formal settlement conferences with the Honorable Magistrate Judge K. Nicole Mitchell, as well as further settlement conferrals by phone conferences with Judge Mitchell.

The $1,500,000.00 aggregate settlement, which is entirely non-reversionary, is a fair and just result that will provide significant individual recoveries for Class Members. The Settlement Agreement is fair, reasonable, and adequate; the Class Representative and Class Counsel are adequate to represent the Class; the proposed notice complies with due process; and all requirements for preliminary approval have been satisfied. This Court should preliminarily approve the Settlement and order the proposed notice to be sent to Class Members.

## II.  BACKGROUND

### A.  Summary of Plaintiffs' Claims and Proceedings to Date

On July 11, 2023, Named Plaintiffs initiated this action, alleging that the County violated the Fourteenth Amendment to the United States Constitution by failing to release them—and similarly situated individuals—within a reasonable time after the completion of their felony criminal sentences, despite the absence of any other holds or warrants justifying continued detention. (*See, e.g.*, ECF No. 1 ¶ 1) Plaintiffs allege that, upon completion of a felony sentence, the County is required to: (1) prepare a "pen packet" containing the individual's basic sentencing information; and (2) transmit the pen packet to the Texas Department of Criminal Justice (TDCJ) to finalize the individual's release. (*Id.* ¶ 9) However, due to an "inadequate, disjointed, paper-based system," Smith County routinely takes several days—or even weeks—to complete and send these pen packets. As a result, individuals who have completed their sentences, or are about to do so, remain incarcerated beyond their lawful release dates. (*Id.* ¶ 10) Named Plaintiffs contend that, as a result of this policy and practice, they were overdetained for periods ranging from eight to twenty-seven days following the completion of their felony sentences. (*Id.* ¶¶ 53–84.)

The County filed its answer to the complaint on August 22, 2023, denying the majority of the allegations in Plaintiffs' complaint. (ECF 5) On October 11, 2023, the Parties submitted competing scheduling orders, with the primary difference being whether discovery should be bifurcated. (ECF 9-1, 9-2) After this Court decided that discovery would proceed in a single phase and not be bifurcated (ECF 10), the Parties submitted another proposed scheduling order which was entered by this Court on October 30, 2023. (ECF 11, 12)

Between October 30, 2023, and April 5, 2025—the date on which this case was settled—the Parties engaged in extensive written fact discovery. During this period, Plaintiffs' counsel propounded several sets of interrogatories and served the County with numerous discovery requests. In response, Defendants produced thousands of documents. Additionally, Defendants

provided voluminous datasets and spreadsheets containing information about all individuals who were held at the Jail so that Plaintiffs could determine Class membership. The Parties exchanged a significant volume of correspondences, including emails and formal letters, and participated in multiple meet-and-confer sessions to address and resolve outstanding discovery issues. Furthermore, Plaintiffs issued several subpoenas to nonparties.

After conducting a substantial amount of written discovery, and before the start of oral discovery, the Parties agreed to participate in mediation with the Honorable Magistrate Judge K. Nicole Mitchell. On October 1, 2024, the Parties attended an in-person mediation session with Judge Mitchell. Although the case was not resolved at that time, the Parties agreed to schedule a second mediation, after conducting additional analysis regarding the size and composition of the Class.

On December 6, 2024, the Parties participated in a second virtual mediation session with Judge Mitchell. While the case was again not resolved, the Parties made substantial progress. Ultimately, on April 5, 2025, the Parties reached a resolution following several informal telephonic mediation sessions with Judge Mitchell.

    **B.**    **Summary of Proposed Settlement**

The settlement terms, which are set forth in greater detail in the Settlement Agreement, are straightforward: in exchange for the creation of a non-reversionary settlement fund totaling $1,500,000.00, the Named Plaintiffs and Class Members agree to fully and finally release, acquit, relinquish, and discharge any and all claims they may have that relate to or arise from the factual or legal allegations set forth in the Complaint.

For the sole purpose of effectuating the Settlement Agreement, the Parties stipulate to the certification of the Settlement Class, defined as follows:

- All individuals who were detained at the Smith County Jail between July 11, 2021, and December 31, 2024, and who (1) were convicted of a felony offense; (2) completed their custodial felony sentence at the Smith County Jail; and (3) were not released within two days following the completion of their custodial felony sentence.

The $1,500,000.00 non-reversionary settlement fund will be allocated as follows:

- $1,000,000.00 will be distributed to Class Members in proportion to the number of compensable detention days credited to each Class Member.

- The remainder of the settlement fund—$500,000—will be allocated to pay attorneys' fees, costs, and expenses; class administration costs; and a service award to the Named Plaintiffs. A maximum of $50,000 will be allocated to cover settlement administration costs. Class Counsel will petition the Court for approval of a $5,000.00 service award for each Named Plaintiff, totaling $15,000.00.  The balance of the $500,000.00 will be allocated to Class Counsel as reimbursement for attorneys' fees, costs, and expenses incurred in the litigation.

### C.    Settlement Administration and Notice

Class Counsel and the proposed Settlement Administrator, American Legal Claims Services, LLC (ALCS), will employ a two-phased notice process. During the first phase, ALCS will use the National Change of Address System and an industry-accepted skip-tracing software to find updated mailing addresses for each Class Member and will send the Notice of Class Action Settlement, and accompanying Claim Form, identical to the one attached as Exhibit 3, to each Class Member via First Class U.S. Mail. Any mailed notices that are returned to ALCS as undelivered and bearing a forwarding address, will be remailed to the forwarding address by ALCS. Any mailed notices that are returned to ALCS as "undeliverable as addressed," will be remailed to any other possible or likely address the skip-tracing software found for the relevant Class Member. ALCS will mail a reminder postcard notice to all non-responsive Class Members during the claims filing period. ALCS will maintain a call center and email address to answer questions from Class Members. The anticipated cost of the first phase is $28,000.00. During the second phase, Class Counsel will engage either an investigator/paralegal and/or further retain

ALCS to perform a deep search for each non-responsive Class Member. The deep search process will include sending additional letters, calling, texting, and in-person outreach to locate Class Members. Class Counsel anticipates that the second phase will cost up to $20,000.00.

### III.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Where, as here, the parties resolve class action litigation through a class-wide settlement, they must obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *ODonnell v. Harris Cnty.*, No. H-16-1414, 2019 WL 422040, at *8 (S.D. Tex. Sept. 5, 2019); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Kincade v. Gen. Tire & Rubber Co*., 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement." (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977))). Settlement agreements conserve judicial time and limit expensive litigation. *See* Newberg and Rubenstein on Class Actions § 13:44 (6th ed.) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Review of a proposed class action settlement generally occurs in two steps. First, "[t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." Manual for Complex Litigation (Fourth) § 21.632 (2004) (hereafter "Manual"). Second, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.* § 21.632. A settlement is fair, reasonable, and adequate if "the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not

improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval." *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015). The proposed Settlement readily satisfies these standards.

### A.    The Proposed Settlement Class Satisfies Rule 23

The Parties have stipulated that a class exists for purposes of effectuating this settlement. The Class, as defined above, consists of "[a]ll individuals who were detained at the Smith County Jail between July 11, 2021, and December 31, 2024, and who (1) were convicted of a felony offense; (2) completed their custodial felony sentence at the Smith County Jail; and (3) were not released within two days following the completion of their custodial felony sentence."

The Class is similar to classes that have been certified in comparable cases, challenging a municipal policy of overdetaining people after the reason for their detention ends. *See, e.g.*, *Thompson v. Jackson*, No. 1:16-CV-04217, 2018 WL 5993867, at *3 (N.D. Ga. Nov. 15, 2018) (certifying class of "[a]ll persons . . . who were detained for more than 24 hours past the time at which employees of the Fulton County Jail knew or should have known that the inmate was to be released, and whose overdetentions were caused by the jail policy not to release inmates without running GCIC checks. . . ."); *Barnes v. D.C.*, 242 F.R.D. 113, 124 (D.D.C. 2007) (certifying class of people who were "not released, or, in the future, will not be released by midnight on the date on which the person is entitled to be released by court order or the date on which the basis for his or her detention has otherwise expired"). Accordingly, the Class easily satisfies the requirements of Fed. R. Civ. P. 23(a) and (b)(3).

### 1.    The Settlement Class Satisfies Rule 23(a).

A plaintiff seeking class certification must meet four requirements under Rule 23(a):

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

**Numerosity.** The numerosity requirement is satisfied when a class is so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1). No specific numerical threshold is required; each case must be specifically examined. *General Tel. Co. v. E.E.O.C.,* 446 U.S. 318, 330 (1980). However, a class of 100 to 150 members, "is within the range that generally satisfied the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Settlement Class consists of 104 individuals, which surpasses the threshold required for numerosity.

**Commonality.** Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high. Commonality does not require that every question be common to every member of the class, but rather that the questions linking class members be substantially related to the resolution of the litigation and capable of generating common answers "apt to drive the resolution of the litigation" even where the individuals are not identically situated. *In re Heartland Payment Sys. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1052 (S.D. Tex. 2012) (citing *Wal-Mart Stores v. Dukes,* 564 U.S. 338, 347 (2011)). Commonality "can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014).

Here, the commonality requirement is met because Plaintiffs can demonstrate that common issues exist. For example, the primary common question in this case is whether Defendant maintained adequate policies and practices to ensure that individuals who were convicted of felony

offenses and received custodial felony sentences were released within a reasonable time after they

were entitled to release. Other central common questions include:

- Whether Defendant maintains or maintained a policy and practice of detaining people for more than the amount of time reasonably necessary to timely process their release after the legal basis for their detention ends; and

- Whether it violates the United Sates Constitution to detain individuals sentenced to custodial felony sentences for more than two days while Defendant completes the pen packet process.

**Typicality.** The typicality requirement is satisfied where the claims or defenses of the class

representatives have the same essential characteristics as those of the class as a whole. "If the

claims arise from a similar course of conduct and share the same legal theory, factual differences

will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).

Here, Named Plaintiffs' claims are typical of the Class. Their claims and Settlement Class

Members' claims all stem from the same course of conduct, and they allege that they suffered the

same injury. All Class Members, including Named Plaintiffs, allege that their injuries arose from

the County's alleged failure to implement policies and practices that ensure that the pen packet

process is timely completed after an individual is sentenced to a felony custodial sentence. And

Plaintiffs and all Class Members allege the same injury: they were detained for 2 or more days

after they were entitled to be released from custody. The fact that Named Plaintiffs and Class

Members were detained for different lengths of time does not destroy typicality. *Thompson*, 2018

WL 5993867, at *8 ("Despite the varying lengths of time each Plaintiff was overdetained, they

and the other class members are pursuing the same legal theory based on the same conduct. . . .

The factual difference in the length of the detention cannot render Plaintiffs atypical of the class.")

Typicality is therefore satisfied.

**Adequacy.** The final hurdle interposed by Rule 23(a) is that the representative parties will

fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To satisfy

constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them. To satisfy the adequacy of representation requirement, plaintiffs must establish that: (1) there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

First, no known or potential conflict exists between the Named Plaintiffs, undersigned counsel, and Settlement Class Members. Named Plaintiffs suffered the same harm as Class Members and have a shared interest in vindicating their constitutional rights. Similarly, no known or potential conflicts of interest exist between undersigned counsel and Class Members. Second, undersigned counsel are highly qualified to prosecute this action. Undersigned counsel have significant experience litigating complex civil rights matters in federal court—including overdetention cases raising identical issues—and have knowledge of both the details of the policies and practices challenged in this case as well as the relevant constitutional law. *See* Exs. 4-7. The fact that undersigned counsel has secured a favorable settlement for the Class further demonstrates their adequacy. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619–620 (1997) (settlement terms can inform adequacy of representation).

### 2. The Settlement Class Satisfies Rule 23(b)(3)

Under Rule 23(b)(3), which governs damages class actions, a class should be certified when "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy both requirements, known respectively as predominance and superiority.

**Predominance.** The predominance requirement is satisfied when "common issues constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Here, common issues regarding both liability and damages predominate over individual ones. As noted, Plaintiffs allege that they and Class Members were injured by a common practice—the County's failure to promulgate adequate policies and practices to ensure that individuals are timely released after the completion of their felony custodial sentences. This showing satisfies the predominance requirement: "common questions predominate over individualized questions [w]here [] Plaintiff[] identif[ies] a specific policy enacted by Defendants that caused their overdetentions . . . ." *Thompson*, 2018 WL 5993867, at *11; *see also, e.g., Healey v. Louisville Metro Gov't*, No. 3:17-cv-00071-RGJ-RSE, 2021 WL 149859, at *25 (W.D. Ky. Jan. 15, 2021) (holding that predominance is satisfied where plaintiff alleges that "Defendants' inadequate process for timely releasing inmates caused respective subclass members to be over-detained."). Common issues therefore predominate over individual ones.

**Superiority.** Rule 23(b)(3) requires that the proposed "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court must consider the following factors to determine whether a class action is the superior method for adjudicating the controversy:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* These factors support certification. First, Class Members have no interest in individually controlling the prosecution of their claims. Indeed, absent certification, individual claims might be abandoned, given the relatively small individual damages at stake for some potential class members. Second, Plaintiffs and undersigned counsel are unaware of any other litigation

concerning the specific facts or claims at issue in this action. Third, the resolution of this case in one judicial proceeding, especially now that a settlement agreement has been reached, is far preferable, for all parties involved, than having multiple proceedings in this or other courts. *Cf. Groseclose v. Dutton*, 829 F.2d 581, 584 (6th Cir. 1987) (noting that the alternative to a consolidated class action would result in an "inefficient situation, fraught with potential for inconsistency, confusion, and unnecessary expense" (citation and quotation omitted)).

Finally, the class action is manageable, and Class Members are ascertainable. The Parties have not only pointed to objective criteria by which to identify Class Members, but have in fact identified all Class Members from records in the County's possession. This class action is therefore eminently manageable. Requiring individual lawsuits would likely result in far greater manageability problems and unnecessary burdens on the judiciary, such as duplicative discovery (including numerous depositions of the same County officials and repetitive production of documents), repeated adjudication of similar controversies in this Court (with the resultant risk of inconsistent judgments), and excessive costs, which would prove uneconomic for potential plaintiffs since litigation costs would dwarf potential recovery.

## B.    The Settlement is Fair, Reasonable, and Adequate

"As this motion is for preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval." *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. at 314 (citation omitted). "If the proposed settlement [1] discloses no reason to doubt its fairness, has no obvious deficiencies, [2] does not improperly grant preferential treatment to class representatives or segments of the class, [3] does not grant excessive compensation to attorneys, and [4] appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* at 314-315.

14

### 1.    There is no reason to doubt the fairness of the settlement

The settlement is entirely non-collusive. The Parties reached this resolution after more than a year of discovery, during which they completed written discovery and engaged in extensive, arm's-length negotiations. These negotiations included two formal settlement conferences before Magistrate Judge K. Nicole Mitchell, as well as several informal telephonic settlement discussions with Judge Mitchell. Accordingly, the settlement is entitled to a presumption of fairness. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 486 (E.D. La. 2020) ("The presumption in favor of settlement is warranted [where] . . . the Settlement is the product of arms-length negotiations between sophisticated parties with the guidance of an experienced, professional mediator."); *see also* Newberg and Rubenstein on Class Actions § 13:45 (courts "historically granted a presumption of fairness to settlements that were shown to be the product of arms-length negotiation"). This factor therefore weighs heavily in favor of preliminary approval of the Settlement Agreement.

### 2.    The settlement does not grant improper or preferential treatment to any segment of the Class

The settlement does not provide improper preferential treatment to the Named Plaintiffs or any segment of the Class. Each Class Member will receive compensation based solely on the number of days of compensable detention, ensuring equitable treatment across the Class. Although the settlement recognizes the efforts of Named Plaintiffs, that does not amount to improper preferential treatment. Service awards "are not uncommon in class action litigation . . . particularly where . . . a common fund has been created for the benefit of the entire class." *Akins v. Worley Catastrophe Response, LLC*, No. CIV.A. 12-2401, 2014 WL 1456382, at *3 (E.D. La. Apr. 14, 2014) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011)). "The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they

incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Id.*

A service award of $5,000.00 for each Named Plaintiff—totaling $15,000.00, or 1 percent of the Common Fund—is appropriate. Courts have found such awards to be presumptively reasonable. *See Williams v. Sake Hibachi Sushi & Bar Inc.*, 574 F. Supp. 3d 395, 415 (N.D. Tex. 2021) (citing *Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-00362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009)); *see also Kemp v. Unum Life Ins. Co. of Am.*, No. CV 14-0944, 2015 WL 8526689, at *7-8 (E.D. La. Dec. 11, 2015) ("in keeping with the average compensation often awarded for [named plaintiff's] efforts within the Fifth Circuit, the Court finds a $5,000 Service Award is reasonable"). More importantly, the Class would not have achieved this significant recovery without the active participation of the Named Plaintiffs. They devoted substantial time and effort to the litigation, including providing detailed accounts of their experiences and injuries, and gathering and submitting documentation that was instrumental in shaping counsel's legal theory. Throughout the course of the case, the Named Plaintiffs remained engaged, staying informed about developments, attending an in-person settlement conference, and playing a meaningful role in the negotiation and decision-making processes of the settlement.

### 3.    The settlement does not grant excessive compensation to attorneys

Counsel seek an award of fees in the amount of $435,000.00, which represents 29 percent of the settlement sum. This fee is reasonable under both the Lodestar method and the percentage-of-the-fund method. *See In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 499 (N.D. Miss. 1996) (collecting cases and finding that "[n]umerous district courts within the Fifth Circuit have also applied a percentage fee approach" and "[t]he Fifth Circuit itself, however, has nevertheless consistently applied a 'lodestar method' to determine the proper amount of an attorneys' fee award

in common fund cases." (citation omitted)); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) ("We join the majority of circuits in allowing our district courts the flexibility to choose between the percentage and lodestar methods in common fund cases[.]").

To determine the lodestar amount, courts consider twelve factors: "(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Union Asset Mgmt. Holding,* 669 F.3d at 642 n. 25 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717, 720 (5th Cir.1974), *overruled on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989).

First, Plaintiffs' counsel's lodestar amounts to $451,337.15, Ex. 4 ¶ 12, which is more than the attorneys' fees being sought. This is a strong indication that the fee request is reasonable. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding fractional lodestar multiplier to be indication of reasonableness of fee request). This figure is expected to increase as work continues through the approval and settlement administration phases. Counsel has billed over 800 hours on this matter, reflecting extensive work conducted over more than three years. *See, e.g.*, Ex. 4 ¶¶ 8-11. Counsel also has incurred $11,260.00 in costs, which include expenses related to hiring a data specialist to review and organize data, engaging a vendor to host discovery materials, and paying court filing fees. *Id.* ¶ 12. Additionally, the issues raised

by Plaintiffs' class action are both novel to this district and legally complex.[2] Zealously representing the Plaintiffs and Class Members in this matter has required substantial skill and experience in investigating and litigating complex civil rights cases in federal court, including similar overdetention cases.

The work of Counsel includes the initial investigation, which began in May 2022—over a year before the case was filed—and involved engaging with Plaintiffs and putative class members to understand their experiences and consequent damages, requesting and reviewing documents, and analyzing court and jail records and data. Counsel realized that the lawsuit required substantial time and resources, including the assistance of co-counsel outside the local jurisdiction. As such, Counsel were unable to take on certain other cases given the substantial amount of work to be done on this action. Counsel dedicated over a year to written discovery, which entailed the production and thorough analysis of thousands of documents and voluminous datasets. In addition, counsel prepared for the  oral discovery phase and prepared for and completed settlement negotiations. The settlement process required substantial additional time to conduct further discovery and data analysis, identify class members, and prepare the documents necessary for preliminary approval.

Notably, the attorneys' fees being sought represent only 29 percent of the total settlement amount—significantly lower than the one-third (33 percent) fee commonly approved in similar cases. See *In re Harrah's Ent., Inc.*, No. CIV. A. 95-3925, 1998 WL 832574, at *4 (E.D. La. Nov.

---

[2] As noted in Counsel's Declaration, Ex. 4 ¶ 14 n.3, it is Counsel's understanding that the challenged practices persisted for years without any legal challenge, whether through a class action or individual lawsuit, and at the time of significant investment in preliminary investigation there was no promise of recovery. Counsel conducted an extensive, year-long investigation to uncover the unconstitutional policies and practices at issue. This investigation presented unique challenges, as the relevant information was not publicly available. Counsel submitted public records requests and manually reviewed months of court and jail data to determine whether the County maintained a policy or practice of routinely failing to release individuals from the Jail after they had completed their felony sentences. During this period, Plaintiffs' counsel also interviewed putative class members and community stakeholders to gain a deeper understanding of the policies and practices in question, and conducted legal research to identify potential constitutional, statutory, and common law claims, as well as possible defenses.

25, 1998) ("It is not unusual, however, for district courts in the Fifth Circuit to award percentages of approximately one third.").

### 4.    The settlement falls within the range of possible recovery

In evaluating whether a settlement agreement falls within the range of possible recovery, the Court must "establish the range of possible damages that could be recovered at trial, and, then, by evaluating the likelihood of prevailing at trial and other relevant factors,  determine whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors." *Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 210 (W.D. Tex. 1998) (citation omitted). Settlement Class Members' individual recoveries compare favorably with recoveries in similar cases. The settlement therefore falls within the range of possible approval.

As an initial matter, "[l]itigation is inherently risky and full of impediments, even where . . . the plaintiffs ha[ve] a strong chance of proving liability." *Hays v. Eaton Grp. Att'ys, LLC*, 2019 WL 427331, at *10 (M.D. La. Feb. 4, 2019). As in *Hays*, Class Counsel here "are experienced, realistic, and understand that the resolution of liability, issues, the outcome of the trial, and the likely appeals process, are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties." *Id.* Under the Settlement Agreement's terms, 104 Class Members will share one million dollars in recovery from the Settlement Fund. This recovery is within the range of plausible outcomes at trial, and has increased value given the particular complexities of this case and the fact that Class Members will be able to collect far sooner than if litigation continued. Additionally, Class Counsel and Named Plaintiffs strongly believe this settlement is fair and beneficial to all parties involved.

## IV.    THE NOTICE TO CLASS MEMBERS IS APPROPRIATE

Before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified pursuant to Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. *Id.*

Here, the proposed Notice describes the nature and status of the litigation; sets forth the relevant class definition; states the class claims and issues; states that a Class Member may enter an appearance through an attorney if the Class Member so desires; discloses the right of Class Members to seek exclusion from the Settlement Class or to object to the proposed settlement, as well as the deadlines for doing so; and warns of the binding effect of the settlement approval proceedings on people who remain in the Settlement Class. In addition, the Class Notice describes the terms of the proposed Settlement and provides contact information for Class Counsel, as well as identifying the fee that they propose to request from the Court. The Class Notice also discloses the time and place of the Fairness Hearing and the procedures for commenting on the Settlement and/or appearing at the hearing.

The Notice will be distributed to Class Members in a manner that provides "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The County will supply Class

Members' last known addresses for the notice mailing and the Settlement Administrator will use the national change of address database and an industry-accepted skip-tracing software to confirm the addresses or find the most up-to-date contact information for each Class Member. Thereafter, the Settlement Administrator shall send a Notice and Claim Form, identical to those attached as Exhibit 3, to each Class Member via First Class U.S. Mail, and, if available, via email. Any mailed notices that are returned to the Settlement Administrator as undelivered and bearing a forwarding address shall be remailed by the Settlement Administrator. Then, Class Counsel or the Settlement Administrator will engage an investigator or paralegal to call Class Members whose mailed Notice was returned as undelivered without a forwarding address and who could not be otherwise notified. The contents of the notice and its method of distribution therefore satisfy all applicable requirements.

## V.      CONCLUSION

After over two years, the completion of written discovery, including review of voluminous data, and an extensive negotiation and settlement process, the Parties have reached a comprehensive agreement that is fair, reasonable, and adequate, and warrants this Court's preliminary approval. As such, the Parties respectfully request that this Court grant preliminary approval of the Settlement, approve the form and proposed manner of distribution of the class notices, and schedule a hearing for final approval consistent with the time frame set forth in the Agreement.

DATE: August 4, 2025                    Respectfully Submitted,

                                        Nathan Fennell
                                        Camilla Hsu
                                        Deason Criminal Justice Reform Center
                                        SMU Dedman School of Law
                                        P.O. Box 750116
                                        Dallas, TX 75275

nfennell@smu.edu
camillah@smu.edu
(214) 768-6973

Meg Gould
Jon Loevy
LOEVY & LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
gould@loevy.com
jon@loevy.com
(312) 243-5900


_/s/ Akeeb Dami Animashaun_
Akeeb Dami Animashaun
355 S. Grand Ave, Suite 2450
Los Angeles, CA 90071
dami@animashaun.me
(929) 266-3971

*Counsel for Plaintiffs & Proposed Class*