## DECLARATION OF A. DAMI ANIMASHAUN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1. I am admitted to practice before the courts of the State of California and the State of New York, as well as several federal courts, including this Court. I am one of several attorneys representing the Plaintiff in this action. I make this statement based on personal knowledge, and if called as a witness could and would testify competently thereto.

2. I am a 2016 graduate of Harvard Law School. Before starting my own firm in 2020, I worked as an attorney at Civil Rights Corps and the American Civil Liberties Union. At both organizations, I litigated civil rights class-action lawsuits challenging unconstitutional policies and practices in municipal criminal legal systems, including unconstitutional pretrial detention policies and practices, which are at issue in this case.

3. I have served, or am serving, as lead or class counsel in the following related civil rights class action lawsuits challenging municipal policies and practices that have led to widespread overdetentions: *Tucker v. King Cnty.*, 2:24-cv-00002-RAJ (W.D. Wash 2024) (challenging pattern and practice of failing to timely release detainees after legally mandated time to conduct probable cause hearings has expired and resulting in class-wide settlement that is pending approval); *Dunn v. Cuyahoga Cnty.*, 1:23-cv-00364-BMB (N.D. Ohio 2023) (challenging jail's systemic failure to timely release pre-trial detainees); *Camarlinghi v. Santa Clara Cnty.*, No. 5:21-CV-03020-EJD, 2022 WL 17740464 (N.D. Cal. Dec. 16, 2022) (challenging pattern and practice of overdetentions at the Santa Clara County Jail and resulting in a $2.375 million settlement; appointed class counsel). I am also counsel in *Chaplin v. Rowe*, 1:23-cv-00423-WO-JLW (M.D.N.C. 2024), a putative class action challenging North Carolina's implementation of an electronic court management system that caused widespread false arrests and overdetentions.

4. I have also originated and served as lead counsel on the following civil rights class-action lawsuits challenging systemic deficiencies in municipal criminal system policies: *Russell v. Wayne Cnty.*, 2:20-cv-11094 (E.D. Mich. 2020) and companion case, *Wayne Cnty. Jail Inmates v. Lucas*, No. 71-173217-CZ (challenging conditions of confinement during the COVID-19 pandemic); *Briggs v. Montgomery*, 2:18-cv-02684 (D. Ariz. 2018) (challenging Maricopa County's "pay-to-play" pretrial diversion program and resulting in a $2.6 million settlement); *Parga v. Board of County Commissioners of the Cnty. of Tulsa*, 4:18-cv-0298 (N.D. Okla. 2019) (challenging Tulsa County's use of pre-set money bail schedules to detain people arrested for misdemeanors and felonies); *Daves v. Dallas Cnty.*, 3:18-cv-00154 (N.D. Tex. 2018) (same).

5. My work has been widely covered in the press. For example:

Bret Jaspers, *Former East Texas Inmates Accuse Smith County of Keeping them Longer than their Sentences* (KERA News (PBS and NPR for North Texas), July 18, 2023), https://www.keranews.org/news/2023-07-18/former-east-texas-inmates-accuse-smith-county-of-keeping-them-longer-than-their-sentences.

Adam Ferrise, *Cuyahoga County Faces Class-Action Lawsuit for Keeping Some 300 People in Jail After they were Ordered to be Released* (Cleveland.com, Feb. 24, 2023), https://www.cleveland.com/cuyahoga-county/2023/02/cuyahoga-county-faces-class-action-lawsuit-for-keeping-some-300-people-in-jail-after-they-were-ordered-to-be-released.html.

David McAfee, *Santa Clara County Sees $2.4 Million Settlement Finally Approved* (Bloomberg Law, Dec. 19, 2022), https://news.bloomberglaw.com/litigation/santa-clara-county-sees-2-4-million-settlement-finally-approved.

Shaila Dewan, *Caught with Pot? Get-Out-of-Jail Program Comes With $950 Catch* (New York Times, Aug. 24, 2018), https://www.nytimes.com/2018/08/24/us/marijuana-diversion-program-maricopa-arizona.html.

Corey Jones, *Tulsa County Operates Unconstitutional, Wealth-Based Detention Scheme, Federal Lawsuit Claims* (Tulsa World, June 6, 2018), https://tulsaworld.com/news/local/tulsa-county-operates-unconstitutional-wealth-based-detention-scheme-federal-lawsuit-claims/article_97c15538-1553-5037-83e4-6ff50cbb9483.html.

6. I have been retained by national nonprofit legal organizations and plaintiffs-side law firms to consult, advise, or otherwise participate in civil rights lawsuits concerning police

misconduct and unconstitutional policies and practices in municipal criminal legal systems. I have spoken at conferences, universities, law schools, and elsewhere about various civil rights related topics.

7. Class Members in this case would likely never have received compensation for the alleged overdetention if Plaintiffs' counsel had not invested substantial resources at the investigation stage of this case—with no promise of any recovery down the road—to gather evidence of the County's practices, identify Class Members, and locate an adequate Class Representative. It is my understanding that the challenged practices persisted for years without any legal challenge, whether through a class action or individual lawsuit.

8. Before filing this case, my co-counsel and I conducted an extensive, year-long investigation to uncover the unconstitutional policies and practices at issue. This investigation presented unique challenges, as the relevant information was not publicly available. As a result, we submitted public records requests and manually reviewed months of court and jail data to determine whether the County maintained a policy or practice of routinely failing to release individuals from the Jail after they had completed their felony sentences. During this period, Plaintiffs' counsel also interviewed putative class members and community stakeholders to gain a deeper understanding of the policies and practices in question. Additionally, we conducted legal research to identify potential constitutional, statutory, and common law claims, as well as possible defenses.

9. On July 11, 2023, Plaintiffs' counsel filed the initial complaint in this matter. Following the County's filing of its Answer on August 22, 2023, the parties commenced fact discovery. Between October 2023 and December 2024, Plaintiffs' counsel completed written discovery, which involved requesting and reviewing thousands of pages of ESI and physical

documents related to the challenged policies, as well as analyzing voluminous court and jail data regarding the timing of thousands of releases that occurred during the class period.

10. In February, the parties agreed to settle this case after two mediations with the Honorable K. Nicole Mitchell. (*See* ECF 55, 56.) Since that time, Plaintiffs' counsel have devoted substantial time to identifying Settlement Class Members. This process has included data analysis to narrow the dataset to the relevant universe of individuals from thousands of jail releases that occurred during the Class Period, as well as cross-referencing of individual court and jail documents to confirm class membership.

11. The settlement process has also involved informal data requests and conferrals with the County regarding relevant records; legal research and the drafting of settlement correspondence exchanged with the County and submitted to Judge Mitchell; participation in two settlement conferences and several informal telephonic settlement conferences; as well as drafting of the Settlement Agreement, Preliminary Approval Motion, and documents filed therewith.

12. As of August 4, 2025, the date of the filing of the Preliminary Approval Motion, Plaintiffs' counsel have devoted over 816 hours to this case, resulting in a lodestar of $451,337.15. Based on Plaintiffs' counsel's prior experience administering class-action settlements, counsel expects to devote several dozen additional hours—at minimum—to this case through the completion of settlement administration. Additionally, Plaintiffs' counsel have incurred $11,260.00 in costs during this case, including expenses related to data consultants, discovery hosting services, travel, and filing fees. Plaintiffs' Counsel's total invoice to date is thus: $462,597.15.

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| A. Dami Animashaun | 273.86 | $800.00 | $219,088.00 |
| Meg Gould | 186.55 | $581.00 | $108,385.55 |

| | | | |
|---|---|---|---|
| Nathan Fennell[1] | 270.53 | $300.00 | $81,159.00 |
| Camilla Hsu[2] | 44.76 | $500.00 | $22,380.00 |
| Steve Weil | 17.90 | $949.00 | $16,987.10 |
| Paralegals | 22.25 | $150.00 | $3,337.50 |
| **Total** | | | **$451,337.15** |

13.    The lodestar calculations do not, however, include all hours spent on this litigation. Substantial work went into preparing this case, which is not reflected in the hours described above. Counsel secured numerous hours of investigative and legal support from a national nonprofit in the development of this lawsuit prior to its filing. Counsel engaged with the Civil Rights Clinic at the University of Texas School of Law to perform extensive pre-filing investigation and research over the course of an academic semester, which was necessary to develop this case. Counsel also paid for nearly 50 hours of investigative support from a part-time investigator to develop this case before filing. None of these hours are included in the totals above.

14.    The rates charged by our attorneys and legal staff are reasonable and within the range of appropriate market rates charged by attorneys with comparable experience levels for litigation of a similar nature.[3]

---

[1] Fennell and Hsu are using the billing rates from their previous employer, where they were employed when they began working on this litigation. These legacy rates represent a substantial discount from their current billing rates

[2] *Id.*

[3] Out-of-district counsel have used their local billing rates in calculating the lodestar. The Fifth Circuit has recognized that "out-of-district counsel may be entitled to the rates they charge in their home districts . . . [when] (1) [] hiring the out-of-town specialist was reasonable in the first instance, and (2) [] the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382 (5th Cir. 2011) (internal quotation omitted). Here, Plaintiffs' counsel believe that the policies and practices challenged in this case persisted for years without legal challenge. The experience and expertise of out-of-district counsel were necessary to investigate and litigate this matter effectively, and thus the use of their local rates is appropriate.

15.  My hourly rate of $800.00 is commensurate with the billing rates of lawyers with similar experience and expertise. Three years ago, in 2022, the Northern District of California found that my rate of $650.00 at that time was reasonable and commensurate with those charged by attorneys with similar experience. *See Camarlinghi v. Santa Clara Cnty.*, No. 5:21-CV-03020-EJD, 2022 WL 17740464, at *6 (N.D. Cal. Dec. 16, 2022). My current higher rates reflect the additional three years of experience that I have gained since then. My rate is also consistent with the billable rate that the Laffey Matrix[4] accords to people who graduated from law school in May 2016, nine years ago.

16.  Because of the risks, uncertainty, and significant investigative time and resources Plaintiff's counsel invested in this case, both during the investigative stage when there was no guarantee of being able to proceed to filing a lawsuit, and after the case was filed and there was still no guarantee of compensation or recovery, Plaintiff's counsel believe that a multiplier of the loadstar is warranted. *See Blum v. Stevenson*, 465 U.S. 866, 900 (1984) ("risk of nonpayment required an upward adjustment to provide reasonable fees"). Because Plaintiffs' counsel will incur substantial additional hours throughout the settlement approval and claims administration processes, our attorneys' fees request will likely be significantly lower than our lodestar, resulting in a negative multiplier.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on August 4, 2025, at New York, NY.

/s/ A. Dami Animashaun

---

[4] The Laffey Matrix is a fee schedule used by many United States courts for determining the reasonable hourly rates for attorneys' fee awards under federal fee-shifting statutes. The Matrix can be found at http://www.laffeymatrix.com/see.html.